UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WADE LESLIE PATTERSON,

                Plaintiff,

v.                                                              1:18-CV-0556
                                                                     (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC     ANTHONY ROONEY, ESQ.
  Counsel for Plaintiff                          KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                CRAIG HUNDLEY, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   DENNIS CANNING, ESQ.
  Counsel for Defendant                       SIXTINA FERNANDEZ, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 17.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.**       **RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1959. (T. 89.) He has a four-year college degree. (T. 205.) Generally, Plaintiff's alleged disability consists of affective disorder, depression, and sleep apnea. (T. 204.) His alleged disability onset date is February 14, 2007. (T. 89.) His date last insured is September 30, 2012. (*Id.*) Plaintiff's past relevant work consists of deliveryman and mutual clerk. (T. 209.)

### B. Procedural History

On June 27, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 89.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 22, 2016, Plaintiff appeared before the ALJ, Bryce Baird. (T. 27-77.) On March 31, 2017, ALJ Baird issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-24.) On March 20, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-20.) First, the ALJ found Plaintiff met the insured status requirements through September 30, 2012 and Plaintiff had not engaged in substantial gainful activity since February 14, 2007. (T. 13.) Second, the ALJ found Plaintiff had the severe impairments of: depressive disorder with anxiety and sleep apnea. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals

one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 14.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> less than a full range of light work as defined in [20 C.F.R. § 404.1567(b).] Specifically, he could lift and carry twenty pounds occasionally and ten pounds frequently. He could sit for six hours and stand or walk for four hours in an eight hour work day. He could not climb ladders, ropes or scaffolds. He is limited to simple routine tasks, no production rate or pace work, no teamwork such as on a production line, no more than superficial interaction with the public and occasional interaction with co-workers. He is limited to work that requires doing the same tasks every day with little variation in location, hours or tasks.

(T. 15.)[1] Fifth, the ALJ determined Plaintiff unable to perform his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 19-20.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in evaluating the opinions of Pamela Reamer, FNP. (Dkt No. 12 at 10-14.) Second, and lastly, Plaintiff argues the ALJ erred in discounting the opinion of treating psychologist, Paul Nation, Ph.D. (*Id*. at 14-16.) Plaintiff also filed a reply in which he reiterated his original arguments. (Dkt. No. 16.)

### B.    Defendant's Arguments

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

3

In response, Defendant makes two arguments.  First, Defendant argues the ALJ properly gave some weigh to FNP Reamer's opinions.  (Dkt. No. 15 at 9-18.)  Second, and lastly, Defendant argues the ALJ properly gave little weight to Dr. Nation's opinion. (*Id*. at 18-24.)

## III.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

4

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

5

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1)[2]. The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. *Id*. §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c).

Plaintiff asserts the ALJ erred in his RFC determination because the RFC failed to account for Ms. Reamer's opinion Plaintiff had "moderate" limitations in maintaining attention and concentration and appropriately dealing with supervisors. (Dkt. No. 12 at 10-14.) For the reasons outlined below, the ALJ's RFC determination properly accounted for Ms. Reamer's moderate limitations.

### A. Pamela Reamer, FNP

Plaintiff's treating source, Ms. Reamer, completed work assessment forms in August 2009, November 2009, June 2011, and December 2011. (T. 239-246.) In August 2009, November 2009, and June 2011, Ms. Reamer opined Plaintiff was "moderately limited" in his ability to: understand and remember instructions; carry out

---

[2] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs"). Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

6

instructions; maintain attention and concentration; make simple decisions; interact appropriately with others; and function in a work setting at a constant pace. (T. 239, 241, 243.) In December 2011 Ms. Reamer indicated Plaintiff had no limitation in maintaining attention and concentration; however, the remainder of her opinion remained consistent with her opinions from August, November, and June. (T. 245.) In all her assessments, Ms. Reamer indicated Plaintiff had no limitations in maintaining socially appropriate behavior or maintaining basic standards of personal hygiene and grooming. (T. 239, 241, 243, 245.) On September 27, 2012, Ms. Reamer wrote a letter indicating Plaintiff was "permanently and totally disabled for the years 2011 and 2012." (T. 463.) On September 29, 2016, Ms. Reamer stated Plaintiff "would not be able to perform duties required by employment" and that he would "miss more than 10 days of work within 1 year." (T. 640.)

The ALJ afforded Ms. Reamer's August 2009, November 2009, June 2011, and December 2011 opinions "some weight." (T. 18.) The ALJ noted Ms. Reamer's opined limitations were "generally consistent with the treating source record but she is not a medically acceptable source." (*Id*.) The ALJ afforded Ms. Reamer's September 2012 opinion "little weight." (*Id*.) The ALJ noted the September 2012 statement was "conclusory," from a "non-acceptable medical source," and inconsistent with treatment records at that time which showed improvement in Plaintiff's condition. (*Id*.) The ALJ afforded Ms. Reamer's September 2016 statement "little weight." (T. 19.) The ALJ noted the statement was provided several years after Plaintiff's date last insured, inconsistent with treatment records, and inconsistent with her earlier opinions indicating Plaintiff had no more than moderate limitations. (*Id*.)

7

Contrary to Plaintiff's assertion, moderate limitations in mental functioning do not necessarily conflict with an RFC limiting a plaintiff to unskilled work. Although the ALJ afforded Ms. Reamer's specific mental limitations "some weight," the ALJ appears to have adopted her mental limitations because the RFC limited Plaintiff to simple, routine tasks, with no production rate or pace work, no teamwork, no more than superficial interaction with the public, occasional interaction with co-workers, and work that requires "doing the same tasks every day with little variation in location, hours or tasks." (T. 15.) The ALJ's RFC is consistent with Ms. Reamer's opinions from 2009 and 2011 that Plaintiff had no more than moderate limitations in mental functioning.

The Second Circuit has repeatedly held that "moderate" limitations do not preclude a plaintiff's ability to perform unskilled work. *See, e.g., McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (no error where ALJ found plaintiff was capable of work despite "moderate difficulties" in social functioning and concentration, persistence or pace); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (holding that "although there was some conflicting medical evidence, the ALJ's determination that Petitioner could perform her previous unskilled work was well supported" where the reports of treating psychiatrist and consulting doctors indicated the plaintiff was "depressive, without psychotic features other than occasional self-reported hallucination, and that her condition improved with medication" and had nothing "more than moderate limitations in her work-related functioning...."); *Matta v. Astrue*, 508 F. App'x. 53, 55 (2d Cir. 2013) (affirming decision where "[t]he ALJ found that plaintiff had moderate difficulties in concentration, persistence and pace and moderate difficulties in social functioning that limit [him] to simple, routine, low-stress, and unskilled tasks, which involve no more than

minimal contact with co-workers, supervisors and the general public."); *Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (holding that consultative examiners' findings that the plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that Plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); see also *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 401 (W.D.N.Y. 2018) (RFC limiting plaintiff to simple, routine work fully consistent with moderate limitations in concentration, persistence, and pace). Therefore, contrary to Plaintiff's assertion, there is no conflict between the ALJ's RFC and Ms. Reamer's opinions because the ALJ's RFC accommodated moderate limitations in mental functioning by limiting Plaintiff to unskilled with additional social limitations and work production limitations.

In addition, vocational expert ("VE") testimony provided at the hearing suggests that the occupations provided do not require more than occasional supervision. At the hearing, the ALJ presented a hypothetical to the VE which ultimately became the RFC. (T. 73.) The ALJ then asked the VE if jobs existed if Plaintiff, in addition to his RFC hypothetical, would require "more than occasional supervision including reminders throughout the workday." (T. 75.) The VE testified that "greater than occasional supervision," after the initial training period, would preclude employment. (*Id*.) Therefore, the occupations provided by the VE would not require more than occasional contact with a supervisor. *See Crumedy v. Comm'r of Soc. Sec.*, No. 1:16-CV-1261, 2017 WL 4480184, at *5 (N.D.N.Y. Oct. 6, 2017) (vocational expert's testimony plausibly suggested that a limitation to occasional contact with supervisor would not necessarily preclude work).

Lastly, as stated by Defendant, Plaintiff presents no evidence that he could not respond appropriately to supervision. (Dkt. No. 15 at 17.) Ms. Reamer indicated Plaintiff was "moderately limited" in interacting with others, she did not specifically identify any problems in interacting with supervisors. (T. 239, 241, 243, 245.) Plaintiff provides no citation to evidence in the record to support his assertion he could not appropriately respond to supervisors.

Therefore, as outlined herein, the ALJ did not fail to reconcile the RFC with Ms. Reamer's medical opinion because the RFC, limiting Plaintiff to unskilled work with additional social and pace limitations, properly accounted for "moderate" limitations in Plaintiff's ability to perform work related mental functions.

**B. Paul C. Nation, Ph.D.**

Plaintiff next asserts the ALJ erred in discounting the opinion of Plaintiff's treating psychologist, Paul C. Nation, Ph.D. (Dkt. No. 12 at 14-16.) Plaintiff contends that without citation to evidence to the contrary, the ALJ erred in determining Dr. Nation's opinion did not relate to the time period before Plaintiff's date last insured. (*Id*. at 16.) Plaintiff's argument fails. Dr. Nation's treatment and opinion were provided after Plaintiff's date last insured, there was no indication the opinion was retroactive, the opinion was on an issue reserved to the ALJ, and the record contained medical opinion evidence and treatment from the relevant time period that the ALJ relied on in making his determination.

Dr. Nation began treating Plaintiff a year after his date last insured and provided a statement concerning Plaintiff's ultimate disability status approximately four years after Plaintiff's date last insured. Plaintiff's date last insured is September 30, 2012. (T.

78.) Dr. Nation began treating Plaintiff in the summer of 2013. (T. 635.) In an undated letter received on October 20, 2016, one month after Plaintiff's hearing, Dr. Nation stated he and Plaintiff "have been working together for quite some time now and I feel quite justified in building his degree of disability to be chronic and quite severe." (T. 639.) Dr. Nation wrote Plaintiff was "unable to work productively given [the] severity of [his] illness." (*Id*.)

The ALJ afforded Dr. Nation's opinion "little weight," reasoning the opinion was provided several years after Plaintiff's date last insured, there were no treatment records from Dr. Nation during the relevant time period, and Dr. Nation's opinion did not indicate that it was retrospective. (T. 19.)

A medical opinion rendered well after a plaintiff's date last insured may be of little, or no, probative value regarding plaintiff's condition during the relevant time period. *See Williams v. Colvin*, 98 F. Supp. 3d 614, 632 (W.D.N.Y. 2015) (the ALJ was not required to consider medical opinions outside of the relevant time period); *McNally v. Comm'r of Soc. Sec.,* No. 5:14-CV-00076, 2015 WL 3621437, at *13 (N.D.N.Y. June 9, 2015) (ALJ properly gave little weight to opinion of consultative examiner that was prepared more than eight years after the date last insured); *Shook v. Comm'r of Soc. Sec.,* No. 12-CV-185, 2013 WL 1213123, at *6 (N.D.N.Y. Jan. 25, 2013), report and recommendation adopted, No. 1:12-CV-185, 2013 WL 1222008 (N.D.N.Y. Mar. 25, 2013) (doctor's opinion written more than two and a half years after date last insured did not relate to relevant time period); *Gill v. Astrue*, No. 1:10-CV-985, 2011 WL 4352410, at *12 (N.D.N.Y. Sept. 15, 2011), report and recommendation adopted*,* No. 1:10-CV-985, 2011 WL 4352719 (N.D.N.Y. Sept. 15, 2011) (treating source report completed two

11

years after date last insured did not address plaintiff's condition during the relevant time period).

First, contrary to Plaintiff's assertion and as stated by the ALJ, there is no indication from Dr. Nation's letter his opinion was retrospective. As outlined above, Dr. Nation did not begin treating Plaintiff until after his date last insured; and further, Dr. Nation's opinion was issued well after his date last insured and the doctor did not indicate his opinion was retrospective. *See Suttles v. Comm'r of Soc. Sec.*, No. 8:14-CV-0581, 2015 WL 13744626, at *9 (N.D.N.Y. Oct. 27, 2015), report and recommendation adopted, *Suttles v. Colvin*, 2015 WL 7308653 (N.D.N.Y. Nov. 19, 2015), *aff'd*, 654 F. App'x 44 (2d Cir. 2016) (Dr. Liotta examined Plaintiff once, not during the relevant time period, and his opinion was not retrospective).

Second, Dr. Nation's opinion was conclusory and on an issue reserved to the Commissioner. The ultimate finding of whether Plaintiff was disabled and cannot work is "reserved to the Commissioner." 20 C.F.R. § 404.1527(d). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) ("Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner. Accordingly, we find no error in the ALJ's decision not to accord controlling weight to Dr. Desai's opinion.") (internal citations omitted); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (ALJ did not err in his decision not to accord treating

physician's opinion plaintiff was totally disabled controlling weight). Therefore, the ALJ did not err in affording the determinations of Dr. Nation's statement little weight, because a doctor's opinion regarding the disability of a plaintiff is not binding on the ALJ.

Third, and lastly, as outline above, the ALJ's RFC determination was supported by substantial evidence in the record. During the relevant time period, Plaintiff received mental health treatment from Ms. Reamer, Tulio Ortega, MD, and other providers at Orleans County Clinic. The ALJ properly summarized Plaintiff's mental health treatment from 2009 through 2012. (T. 16-19.) The ALJ further summarized the medical opinion evidence in the record. (T. 18-19.) During the period prior to Plaintiff's date last insured, Ms. Reamer opined he had no more than moderate limitations in functioning. (T. 239, 241, 243, 245.) Dr. Ortega noted Plaintiff had symptoms of depression, but reported feeling "fine" and "very grateful for all [his] medications which allow him to function." (T. 313.) Plaintiff reported to Dr. Ortega he was pleased with his therapist and believed his medications were working. (T. 271.)

Although Dr. Nation's opinion was outside the relevant time period, the ALJ evaluated the opinion. (T. 19.) The ALJ ultimately relied on the medical evidence provided during the relevant time period to formulate Plaintiff's mental RFC. Therefore, the ALJ did not err in his evaluation of Dr. Nation's opinion and the ALJ's mental RFC was supported by substantial evidence in the record.

Overall, the ALJ properly assessed the opinion evidence in the record and the mental RFC was supported by substantial evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 20, 2019

*/s/ Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge